IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN DAVIS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 09-1778** |
| v. | : | |
| | : | |
| **DARBY BOROUGH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

October _21_, 2009                                                                                          Anita B. Brody, J.

## MEMORANDUM

### I. Introduction

On April 27, 2009, Plaintiff Warren Davis ("Davis") filed a complaint against Defendants Darby and Yeadon Borough, as well as Darby Borough Police Officer Matthew Rinderer, Yeadon Borough Police Officer Ferdie Ingram, and Pennsylvania State Constable Michael Connor ("Constable Connor") in their official and personal capacities. Davis's complaint also alleges claims against GEO Group, Inc., a Florida corporation that operates the George W. Hill Correctional Facility in Pennsylvania, and two unnamed Defendants, John and Jane Doe, who Davis believes are police officers employed either by Darby or Yeadon Borough. Davis brings five overlapping claims against Defendants, including federal and state due process violations, violations of his First Amendment right to freedom of political speech and association, First Amendment retaliation, and wrongful and/or false imprisonment.[1] Constable Connor moves to

---

[1] On June 18, 2009, I approved a stipulation between Davis and Defendants Darby Borough and Officer Rinderer in which Davis agreed to withdraw with prejudice his claims under the Fifth, Sixth, Eighth, and Fourteenth Amendments; his claim under the Pennsylvania Constitution; his

dismiss all counts against him in his personal capacity based on the theory that he is entitled to either absolute judicial or qualified immunity.[2]

## II. Jurisdiction and Legal Standard

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because many of Davis's claims are brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over Davis's state law claims pursuant to 28 U.S.C. § 1367. In deciding a motion to dismiss under FED. R. CIV. P. 12 (b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). A motion to dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff would not be entitled to relief under any reasonable reading of the complaint. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

## III. Factual Background[3]

On April 26, 2007, Davis was arrested at his residence pursuant to a bench warrant issued in 1993. While being handcuffed, Davis repeatedly told the arresting officers that the warrant had been rescinded in 2000. He also informed the officers that inside his house he had the documentation to prove that the warrant was no longer valid. The arresting officers took Davis to Darby Police Station and then transferred custody of him to Constable Michael Connor, who

---

claim of punitive damages against Darby Borough and Officer Rinderer in his official capacity; and his claim of wrongful and/or false imprisonment against Darby Borough.

[2] Plaintiff has withdrawn his punitive damages claims against Constable Connor in his official capacity.

[3] The facts are stated in the light most favorable to Davis, as the non-moving party.

took Davis to George W. Hill Correctional Facility. Constable Connor and the correctional facility's employees then committed Davis to the prison. Throughout the process, Davis repeatedly told Defendants that the warrant had been rescinded and that his wife possessed the documentation.

Davis was strip-searched, fingerprinted, and forced to remain in prison until the following morning. At 11:30 a.m. on April 27, 2007, Davis was released from the correctional facility with no explanation or paperwork.

## IV. Discussion

Constable Connor's Motion to Dismiss is based upon two theories: judicial immunity and qualified immunity. Judicial immunity affords judges absolute immunity from civil liability under § 1983 "for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Constable Connor is not a judge, but I understand his requested defense to be that derivation of judicial immunity known as quasi-judicial immunity, which is reserved for nonjudicial officials whose duties "have an integral relationship with the judicial process." *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980). This type of immunity was established to prevent "a nonjudicial officer who is delegated judicial duties in aid of the court [from becoming] a 'lightning rod for harassing litigation' aimed at the court." *Id.* (quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976)). *See also Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) ("Officials must not be called upon to answer for the legality of decisions which they are powerless to control.").

Qualified immunity also serves as a strong protection against civil liability for government officials. "A government official is entitled to qualified immunity if his 'conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[P]articularly in § 1983 cases involving alleged violations of the Fourth Amendment, the Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). The qualified immunity defense was established to "avoid[] unnecessarily extending the scope of the traditional concept of absolute immunity." *Forrester v. White*, 484 U.S. 219, 224 (1988).

In determining whether to afford government officials absolute immunity above and beyond their presumptive qualified immunity, courts are to take "a 'functional' approach." *Id*. As the Supreme Court has explained,

> Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy.

*Id*. Constable Connor has not met his burden of showing that he deserves absolute (i.e., quasi-judicial) immunity. After analyzing why absolute immunity is inappropriate, I will explain why, based on the facts alleged in the Complaint, Constable Connor also has not established that he is entitled to qualified immunity, although further discovery may uncover facts that prove otherwise. Consequently, Constable Connor's motion is denied without prejudice.

A. Absolute Immunity

Constable Connor claims that in transporting Davis from the Darby Police Station to the George W. Hill Correctional Facility on April 26, 2007 pursuant to a bench warrant of arrest from 1993, he was merely acting as an arm of the judiciary and thus is entitled to judicial immunity. The only case Constable Connor cites in support of his contention that he is personally immune from damages under the Civil Rights Act is *Winterhalter v. Three Rivers Motors Co.*, 312 F. Supp. 962, 963 (W.D. Pa. 1970). While it is true that the district court in *Winterhalter* granted judicial immunity to constables serving a warrant regularly issued to them by a magistrate, that holding is not binding on me. The Third Circuit has not yet extended quasi-judicial immunity to constables executing warrants. *See, e.g.*, *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000), discussed *infra* Part IV.B.

The Third Circuit, however, has written that "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages." *Hamilton v. Leavy*, 322 F.3d 776, 782-83 (3d Cir. 2003) (regarding a prisoner's protective custody order). In addition, in a 2005 unpublished (nonprecedential) opinion, the Third Circuit afforded absolute immunity to employees of the Domestic Relations Section of the Lackawanna County Family Court who executed a facially valid bench warrant. *Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005). The Circuit Court drew support for this decision from *Waits v. McGowan*, 516 F.2d 203, 206-07 (3d Cir. 1975), in which the court wrote that "where [a] defendant is directly involved in the judicial process, he may . . . be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge." *Id*. at 206.

This case can be distinguished from *Hamilton*, *Lepre*, and *Waits* based on the sort of

executive officials involved.  *Hamilton* dealt with prison officials carrying out a protective order, *Lepre* involved Family Court employees, and *Waits* dealt with an investigator assigned by a district attorney to assist a prosecution.  None of the government officials in those cases were "the equivalent of [a] . . . police officer, who is empowered by the state to initiate discretionary acts depriving others of their rights." *Waits*, 516 F.2d at 207.  The Supreme Court has noted that "[t]he common law has never granted police officers an absolute and unqualified immunity." *Pierson v. Ray*, 386 U.S. 547, 555 (1967).  *See also Imbler v. Pachtman*, 424 U.S. 409, 421 (1976) (noting that the Court's immunities analyses are often "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law").  Instead, police officers are entitled to qualified immunity.  *See Malley v. Briggs*, 475 U.S. 335, 341-42 (1986).

Constable Connor, in arguing that constables serving warrants are merely "arm[s] of the judicial power," (Def.'s Mot. to Dismiss 5), appears to imply that Pennsylvania State constables are not the equivalent of police officers.  However, state law grants constables, as well as police officers, the power to arrest "all persons guilty of a breach of the peace . . . without warrant and upon view." 13 PA. CON. STAT. § 45.  The fact that constables are authorized "to initiate discretionary acts depriving others of their rights," *Waits*, 516 F.2d at 207, argues in favor of considering constables as equivalent to police officers in the context of civil liability immunity.

Given that there is a "presumption . . . that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," *Burns v. Reed*, 500 U.S. 478, 486-87 (1991), there is no reason why constables who assist police officers in the execution of an arrest warrant should be entitled to absolute immunity. *See id.* at 487 (noting that the Court

has "refused to extend [absolute immunity] any 'further than its justification would warrant'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)). *See also Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224 (1st Cir. 1990) (denying absolute immunity to a marshal who caused the execution of a vacated warrant).

    B.  Qualified Immunity

Constable Connor also argues that he cannot be held liable for his assistance in arresting Davis because he is entitled to qualified immunity. "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). *Cf. Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (noting that courts have discretion in deciding which of the two steps to address first). The Fourth Amendment prohibits arrests made in the absence of probable cause. It is well established that defective warrants cannot provide probable cause for an arrest. *See Berg v. County of Allegheny*, 219 F.3d 261, 269-70 (3d Cir. 2000). In this case, neither Constable Connor nor any of the other Defendants had probable cause to arrest Davis because the warrant they relied on for probable cause had been vacated seven years prior.

Consequently, the dispositive "inquiry is whether a reasonable [constable] could have believed that his or her conduct was lawful, in light of clearly established law and the information in the [constable's] possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). Constable Connor argues that he only transported the Plaintiff from a police station to a

correctional facility.[4] Furthermore, he contends that the Complaint fails to assert that he had any information in his possession that should have led him to believe that the warrant was defective and the arrest unlawful.

Constable Connor is correct that "[o]rdinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause." *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). In fact, the Third Circuit has "generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant." *Id*. at 273 (citing cases).

> Nevertheless, an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances. Such circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight.

*Id*.

In *Berg v. County of Allegheny*, the Third Circuit analyzed the immunity of a constable who had arrested the plaintiff, Raymond Berg, pursuant to an erroneously issued, but facially valid warrant. The warrant was erroneously issued because the warrant clerk had transposed two digits in the criminal complaint number. Also, at first, the constable went to the wrong house, which was actually the last address of the person for whom the warrant was supposed to be

---

[4] It is unclear whether Constable Connor is attempting to argue that as a mere transporter of Davis he was not an arresting officer and thus had no need to make a probable cause determination. If that is his argument, he is incorrect. "A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated." *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005). *See also Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) ("[T]he police . . . may not disregard facts tending to dissipate probable cause."); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause.").

issued. Then the constable called Berg four or five times to get proper directions and drove for over an hour to arrive at Berg's house. Despite having warned Berg of his arrival, the constable found Berg calmly entertaining guests at a party at his house. Berg thought that the constable was arresting him in regards to a six-month parole term Berg had completed three years earlier. Berg offered to show the constable his release documents, but the constable refused to look at them. The constable did call the appropriate sheriff's office and was simply told that the warrant was still active. However, he did not call the probation services supervisor who had requested the arrest warrant. That supervisor later testified that had the constable called him, he would have checked his files and told the constable not to arrest the plaintiff. *Id*. at 266-68.

The Third Circuit, after examining the testimony of another Pennsylvania State constable who had been retained by Berg, was persuaded to remand the case for findings of fact regarding the reasonableness of the defendant constable's reliance on the warrant. The other constable felt that the defendant constable's reliance was unreasonable under the circumstances, which included "the age of the warrant, the invalid address, . . . [the] documentation that [Berg] had completed his probation, Berg's cooperativeness, . . . and the nonviolent nature of the crime." *Id*. at 273.

In the present case, the factual background is limited but similar to *Berg*. Davis contends that on April 26, 2007, he was arrested at his residence and taken to George W. Hill Correctional Facility pursuant to a 1993 bench warrant that had been rescinded in 2000. He claims that he repeatedly informed the arresting officers, including Constable Connor, that he had the documents to prove that the warrant had been rescinded inside his house. He further claims that no one, including Constable Connor, bothered to ascertain the validity of the warrant or examine

9

Davis's documentation, which was inside his home and then in his wife's possession. (Compl. ¶3.2-3.3).

Many important facts have yet to be considered, including, among others:

- the basis for the issuance of the bench warrant in 1993;
- whether Constable Connor ever saw the warrant;
- whether the warrant had any expiration date on it;
- whether Constable Connor would have had difficulty ascertaining the credibility of Davis's documentation;
- what Constable Connor was told by the officers who transferred Davis to his custody.

It is possible that further discovery will uncover facts that will show that Constable Connor's behavior was objectively reasonable. *See Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of any assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant."). However, taking the allegations made in the Complaint in the light most favorable to the Plaintiff, it may be objectively unreasonable that Constable Connor failed to make even the briefest of inquiries into the validity of the fourteen-year-old warrant, especially considering that Davis claimed to have easily accessible proof that the warrant had been rescinded seven years prior. *Cf. Berg*, 219 F.3d at 268 (explaining that the arresting constable at least called someone to attempt to verify the validity of the warrant), and *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224 (1st Cir. 1990) (noting that arresting marshal attempted by phone and radio to verify plaintiff's ultimately vindicated protestations that warrant had been

vacated). Consequently, at this stage of the proceedings, it is not appropriate to afford Constable Connor qualified immunity.

## V.  Conclusion

For the reasons explained above, Defendant Connor's Motion to Dismiss is denied without prejudice.

s/Anita B. Brody

_____

Anita B. Brody, J.